**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

MICHAEL MAX VALADEZ,
Petitioner,

v.

SCOTT FRAUENHEIM, Warden,
Respondent.

Case No. 19-06649-BLF (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY; DIRECTIONS TO CLERK**

Petitioner has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his 2014 criminal judgment. Dkt. No. 1 ("Petition"). Respondent filed an answer on the merits. Dkt. No. 14 ("Answer"). Petitioner filed a traverse. Dkt. No. 15 ("Traverse"). For the reasons set forth below, the petition is **DENIED**.

## I. BACKGROUND

A jury convicted Petitioner of attempted murder and shooting at an inhabited dwelling. Ans., Ex. A at 369–72*; see also* Cal. Pen. Code, §§ 187, 246, 664. In addition, the jury found firearm and gang enhancements. *See* Cal. Pen. Code, §§ 186.22 (b)(1)(C) and (b)(4), 12022.53(d). Petitioner was sentenced to a total term of 30 years to life in prison. Ans., Ex. A at 428–31. On March 21, 2017, the California Court of Appeal ("state appellate court") affirmed the judgment. *See* Ans., Ex. F; *see also People v. Valadez*, No. H041782, 2017 WL 1058438 (Cal. Ct. App. Mar. 21, 2017) (unpublished). On June 28, 2017, the California Supreme Court summarily denied review. *See* Ans., Ex. H. Petitioner filed a habeas petition in the state appellate court, which was summarily denied on September 21, 2018. Ans., Ex. I. On July 31, 2019, the California Supreme Court denied the petition for writ of habeas corpus without prejudice, to Petitioner filing a motion in the

trial court pursuant to Cal. Pen. Code § 1203.01, which provides for an evidence preservation proceeding, in certain circumstances. On October 16, 2019, Petitioner filed the instant habeas petition. Pet.

## II. STATEMENT OF FACTS

The following background facts are from the opinion of the state appellate court on direct appeal:

> **A. Evidence Regarding the Shooting**
> Defendant is a gang member affiliated with El Hoyo Palmas, a subset of the Norteño criminal street gang. The victim, also affiliated with the Norteño gang, had recently publicly expressed his intention to drop out of or at least step back from the gang lifestyle.
>
> The victim and his girlfriend were returning home a little before 9:00 p.m. when a man approached from the passenger side of their car as they pulled into the driveway. The man verbally confronted the victim, who saw the man had a gun and punched him in the face. The man fell backward, then recovered and pulled the gun from his waistband.
>
> He fired five to seven shots in the direction of the victim and the house. Two or three of the shots hit the victim in the leg, shattering the bone and causing him to fall to the ground. The victim's girlfriend and several neighbors helped him into the house and called 911. Multiple bullet holes could be seen penetrating the structure of the house.
>
> When police arrived, they asked the victim what happened and he said he had been shot by a fellow gang member named Michael who was around 18 years old. After the victim was taken to the hospital, police interviewed his girlfriend who told them the shooter was a person named Michael whom she knew because he is the younger brother of a girl she had known since elementary school. She showed the police officers pictures of the shooter by accessing his Facebook page on her phone.
>
> A person driving by around the time of the shooting saw a man wearing a baseball cap and light colored shirt shooting at another man in a driveway. The shooter got into the passenger side of a car and the car drove away. The witness wrote down the car's license plate number and reported it to police, who discovered the vehicle was registered to defendant.
>
> Police interviewed the victim after he arrived at the hospital and he related essentially the same details about the incident as before, but this time refused to identify the shooter by name. An investigator with the District Attorney's office interviewed the victim several months later and he again refused to identify the shooter, expressing that he did not want to be "a rat."

> Less than 24 hours after the shooting, defendant was arrested. Samples taken from his hands at the time of the arrest tested positive for gunshot residue, a result consistent with having recently fired a gun or being close to someone who did.
>
> At the preliminary hearing, the victim appeared under subpoena from the District Attorney. He testified that he did not know the identity of the shooter and denied telling the police that it was Michael.
>
> The victim did not appear at trial. The court held a hearing outside the presence of the jury on the issue of whether the prosecution had been reasonably diligent in attempting to secure the victim's presence at trial, and found that the prosecution acted with reasonable diligence. As a result, the victim was deemed unavailable and the prosecution was allowed to read into the record his preliminary hearing testimony denying he knew the shooter, and then to impeach that testimony by introducing the victim's previous statements to police, including the statement identifying the shooter by name.
>
> The victim's girlfriend testified at trial and denied knowing the shooter and ever telling the police the identity of the shooter. The prosecution then impeached that testimony by introducing her earlier statements to police identifying the shooter as "Michael."
>
> The defense presented testimony from defendant's friend, who said that she was with defendant all night on the night of the shooting and did not see him shoot anyone.
>
> **B. Gang Evidence**
> A law enforcement officer qualified as an expert in the area of criminal street gangs testified that defendant is a member of El Hoyo Palmas, a subset of the Norteño criminal street gang. The primary activities of El Hoyo Palmas include drug sales, gun sales, burglary, assaults with deadly weapons, and murder. Two examples of the pattern of crimes committed by the gang's members are a 2009 assault with a deadly weapon that led to a conviction with a gang enhancement, and a 2011 assault with a deadly weapon also resulting in a conviction with a gang enhancement.
>
> The expert opined that the shooting in this case was committed for the benefit of the gang because it was done in retaliation for the victim's stated intention to step away from the gang, and it furthered the gang's reputation for intimidation and violence.

*Valadez*, 2017 WL 1058438 at *1–2.

## III. DISCUSSION

### A. Legal Standard

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

a federal court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

The state court decision to which Section 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991).[1] In reviewing each claim, the court must examine the last reasoned state court decision that

---

[1] Although *Ylst* was a procedural default case, the "look through" rule announced there has been extended beyond the context of procedural default. *Barker v. Fleming*, 423 F.3d 1085, 1091 n.3 (9th Cir. 2005).

addressed the claim. *Cannedy v. Adams*, 706 F.3d 1148, 1158 (9th Cir.), *amended*, 733 F.3d 794 (9th Cir. 2013).

**B. Claims and Analyses**

Petitioner raises the following two claims in this federal habeas petition:

(1) the admission of the victim's preliminary hearing testimony and his statements to the police violated Petitioner's right to confrontation under the Sixth Amendment; and

(2) there was insufficient evidence to support the gang enhancement.

**1. Confrontation Clause**

Petitioner argues that his Sixth Amendment rights were violated when the trial court permitted the introduction of the victim, Juan Godinez's preliminary hearing testimony, and three statements he made to the police, after finding Godinez unavailable to testify at trial. Pet. 7–14. Petitioner contends that the prosecution did not exercise reasonable diligence in securing Godinez for trial. *Id*. Petitioner also argues that the statements made by Godinez to the police were testimonial hearsay and their introduction violated the Supreme Court's holding in *Crawford v. Washington*, 541 U.S. 36 (2004). *Id*.

The state appellate court laid out the relevant background and addressed this claim as follows:

> Defendant contends that the trial court erred by admitting into evidence the victim's preliminary hearing testimony after finding that the victim was unavailable to testify at trial (which in turn allowed for the introduction of statements he made to police, for impeachment purposes). Defendant argues the prosecution failed to exercise reasonable diligence in attempting to secure the attendance of the witness at trial and therefore admitting the preliminary hearing testimony violated his right to confront the witnesses against him as guaranteed by the Sixth Amendment to the United States Constitution and article I, section 15 of the California Constitution. [FN]
>
> The Sixth Amendment gives criminal defendants the right to confront and cross-examine the witnesses against him or her. (*People v. Carter* (2005) 36 Cal.4th 1114, 1172, citing *Pointer v. Texas* (1965) 380 U.S. 400, 403–405.) But this right is subject to certain exceptions, including the one at issue here: the unavailability at trial of a witness who has given testimony at a previous judicial proceeding. "An exception to the confrontation requirement exists where the witness is

unavailable, has given testimony at a previous judicial proceeding against the same defendant, and was subject to cross-examination by that defendant." (*People v. Carter*, *supra*, at p. 1172.)

In order for the unavailability exception to apply, a court must make a threshold finding that the witness in question is truly unavailable. Under federal constitutional standards, a witness is deemed unavailable for purposes of complying with the Sixth Amendment confrontation right where the prosecution shows it made a "good faith effort" to obtain the presence of the witness at trial. (*Barber v. Page* (1968) 390 U.S. 719, 725.) Introduction of prior testimony from a witness who does not appear at trial is allowed under the Sixth Amendment and under California law so long as the prosecution has used " 'reasonable diligence' " in its unsuccessful efforts to locate the missing witness. (*People v. Cromer* (2001) 24 Cal.4th 889, 898.)

We review de novo the trial court's determination that a witness was unavailable. (*Cromer*, *supra*, 24 Cal.4th at p. 894.) We would be required to defer to the trial court's factual findings to the extent that any of the facts relating to the unavailability determination were in dispute (*Id*. at p. 900), but there are no such factual disputes here as defendant did not challenge any of the facts presented by the prosecution at the hearing on the unavailability issue or present any affirmative evidence.

Using our independent judgment to review the undisputed facts in the record, we conclude the trial court did not err when it determined the prosecution exercised reasonable diligence in attempting to secure the victim's attendance at trial. " 'The lengths to which the prosecution must go to produce a witness ... is a question of reasonableness.' " (*People v. Herrera* (2010) 49 Cal.4th 613, 622.) Absent knowledge of a "substantial risk" that the witness will flee, the prosecution is not required to take protective measures to prevent the witness' disappearance. (*People v. Wilson* (2005) 36 Cal.4th 309, 342.) "[W]hen a witness disappears before trial, it is always possible to think of additional steps that the prosecution might have taken to secure the witness' presence ... but the Sixth Amendment does not require the prosecution to exhaust every avenue of inquiry, no matter how unpromising." (*Hardy v. Cross* (2011) 565 U.S. 65, 71.)

In this case, the victim was a resident of the community and had children living in the community. He voluntarily appeared at the District Attorney's office for at least one interview while the case was pending, was located without difficulty for service of a subpoena in connection with the preliminary hearing, and appeared pursuant to that subpoena. The prosecutor's investigator testified at the hearing on unavailability that the victim's precise whereabouts were known until two weeks before trial because he was in custody at the county jail in an unrelated matter, and the investigator believed that he would remain in custody through the time of trial. When the investigator learned that the victim had been released from

custody after posting bail, he called the victim's phone number multiple times; went to the victim's home address; spoke to the victim's girlfriend and learned of a possible alternate address; went to the alternate address to look for the victim; and enlisted the assistance of two different law enforcement agencies to locate him.

The cases relied upon by defendant where a lack of diligence was found are distinguishable. In *People v. Blackwood* (1983) 138 Cal.App.3d 939, 947, the prosecution knew where the witness was located but simply decided not to engage in the out-of-state subpoena process that would have been required to subpoena him. In *People v. Cromer*, *supra*, 24 Cal.4th at pp. 903–904, the Supreme Court noted that whether a search for the witness was timely begun is an important factor and even with an original trial date of September, the prosecution did not begin to search until December and then failed to follow up on promising leads. In *People v. Sanders* (1995) 11 Cal.4th 475, 524, the prosecution did not make any effort to locate the witness until well into the trial, despite knowing the witness had been unreliable in the past.

As the trial court here noted, the prosecution could have served the victim with a trial subpoena while he was in custody. That hindsight notwithstanding, we cannot say on this record that the prosecution failed to exercise reasonable diligence in attempting to produce the victim to testify at trial.

Three prior statements the victim made to police (one immediately after the shooting, one about forty-five minutes later at the hospital, and one at an interview over a month later) were admitted to impeach his preliminary hearing testimony that he could not identify the shooter. Defendant argues that the statements to police were testimonial under *Crawford v. Washington* (2004) 541 U.S. 36 (*Crawford* ), and therefore inadmissible.

Under the rule established by *Crawford*, "testimonial" out-of-court statements are inadmissible unless the witness is unavailable and the defendant had a previous opportunity to cross-examine the witness. (*Crawford*, *supra*, 541 U.S. at p. 68.) To determine whether statements made to law enforcement are testimonial, courts must assess whether the primary purpose of the questions eliciting the statements is to respond to an ongoing emergency (suggesting the statements are not testimonial), or to elicit information as part of an investigation into past criminal conduct (suggesting the statements are testimonial). (*Davis v. Washington* (2006) 547 U.S. 813, 821–822.) In *People v. Chism* (2014) 58 Cal.4th 1266, the California Supreme Court described six factors to be considered in making this assessment: (1) an objective evaluation of the circumstances of the encounter and the statements and actions of the individuals involved; (2) whether the statements were made during an ongoing emergency or under circumstances that reasonably appeared to present an emergency, or were obtained for purposes other than for use by the prosecution at trial; (3) whether any actual or

perceived emergency presented an ongoing threat to first responders or the public; (4) the declarant's medical condition; (5) whether the focus of the interrogation had shifted from addressing an ongoing emergency to obtaining evidence for trial; and (6) the relative formality of the statement and the circumstances under which it was obtained. (*Id*. at p 1289.) " 'In the end, the question is whether, in light of all the circumstances, viewed objectively, the "primary purpose" of the conversation was to "create an out-of-court substitute for trial testimony." ' " (*People v. Rangel* (2016) 62 Cal.4th 1192, 1214–1215.)

Here, the first statement the victim made to police identifying the shooter as fellow gang member Michael is clearly nontestimonial. The officer who spoke to the victim was responding to a 911 call reporting a shooting, and the conversation took place just minutes after the shooting occurred. The responding officers approached the scene not knowing whether an armed suspect was still present. When the officer began questioning the victim, he was in his kitchen, bleeding from gunshot wounds and "trying to compose himself." Statements made to the officer by the victim under these circumstances are not testimonial. *See People v. Chism*, *supra*, 58 Cal.4th at p 1289 [finding statements nontestimonial when they were made to an officer just after a shooting, the declarant was " 'nervous' and 'shaken up,' " and the officer was unsure whether an armed suspect was still nearby.] )

We will assume, as the Attorney General does in the Respondent's Brief, that the two later statements given by the victim (at the hospital forty-five minutes after the incident and at the District Attorney's office over a month later) are testimonial because they were made at a time when the focus had shifted from dealing with an ongoing emergency to investigating a crime. But even with this assumption, there was no Sixth Amendment violation under *Crawford* because the witness was properly determined to be unavailable and defendant had previously cross-examined him at the preliminary hearing. (*See Crawford*, *supra*, 541 U.S. at p. 68 [testimonial statements are admissible if the declarant is unavailable and there was a prior opportunity for cross-examination.] )

Regardless, once the victim's preliminary hearing testimony was admitted, in which he denied knowing who the shooter was and denied ever identifying the shooter to police, his three contrary statements to police were properly admitted as impeachment evidence, something defendant readily concedes in his opening brief.

Given the admissibility of the statements for impeachment purposes, the testimonial analysis under *Crawford* is relevant only to determining if the jury should have been instructed to consider the statements solely for impeachment of the victim's credibility. But because defendant never requested a limiting instruction, he has forfeited any challenge based on the court's failure to give one. (*People v. Simms* (1970) 10 Cal.App.3d 299,

> 311 ["there is no duty, in the absence of a request, to give an instruction limiting the purpose for which evidence may be considered."].)
>
> We find no error in admitting the victim's preliminary hearing testimony because the trial court properly determined the prosecution was reasonably diligent in attempting to secure the witness's attendance at trial and he was therefore unavailable. We also find no sua sponte duty for the trial court to give an instruction limiting use of the victim's prior testimony and statements for impeachment purposes only.
>
> Even assuming error in admitting the preliminary hearing testimony and other statements of the victim, the error would be harmless beyond a reasonable doubt, the standard we would apply to evaluate prejudice here. (*See Chapman v. California* (1967) 386 U.S. 18, 23–24.) Putting aside the victim's prior testimony and statements to police, the evidence against defendant was overwhelming: the victim's girlfriend identified defendant as the shooter by name and showed police photographs of him; a neighbor reported defendant's car as the vehicle used during the shooting; and defendant's hands tested positive for gunshot residue with no innocent explanation provided.

*Valadez*, 2017 WL 1058438, at *2–5.

The Confrontation Clause of the Sixth Amendment provides that the accused has the right to "be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford*, the Supreme Court held that the Confrontation Clause prohibits the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." 541 U.S. at 53–54. Although the *Crawford* Court left "for another day" establishing a comprehensive definition of "testimonial," it made clear that preliminary hearing testimony falls within the definition of "testimonial". *Id*. at 68.

A witness is unavailable under the Confrontation Clause if "the prosecutorial authorities have made a good faith effort to obtain his presence at trial" but were unsuccessful. *Barber v. Page*, 390 U.S. 719, 724–25 (1968). The good faith test is fact-dependent and the lengths to which the prosecution must go to produce a witness is determined under a reasonableness standard. *See Hardy v. Cross*, 565 U.S. 65, 70–71 (2011) (per curiam); *Ohio v. Roberts*, 448 U.S. 56, 74–75 (1980) ("The ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to

locate and present that witness."), *abrogated on other grounds by Crawford*, 541 U.S. 36. The Supreme Court has made clear that, while "it is always possible to think of additional steps that the prosecution might have taken to secure the witness' presence . . .," the Sixth Amendment does not require the prosecution to exhaust every avenue of inquiry, no matter how unpromising." *Hardy*, 565 U.S. at 71 (citation omitted); *see also Roberts*, 448 U.S. at 74 (observing that the reasonableness standard does not require a prosecutor to perform a "futile act"). When, as here, a claim attacking a state court's "unavailability" finding is governed by Section 2254(d), "the deferential standard of review set out in 28 U.S.C. § 2254 (d) does not permit a federal court to overturn a state court's decision on the question of unavailability merely because the federal court identifies additional steps that might have been taken." *Hardy*, 565 U.S. at 71.

Overall, Confrontation Clause claims are subject to harmless error analysis. *United States v. Nielsen*, 371 F.3d 574, 581 (9th Cir. 2004). For purposes of federal habeas review, the standard applicable to violations of the Confrontation Clause is whether the inadmissible evidence had an actual and prejudicial effect upon the jury. *See Hernandez v. Small*, 282 F.3d 1132, 1144 (9th Cir. 2002) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

**a. Preliminary Hearing Testimony**

Habeas relief is not warranted with respect to the admission of Godinez's preliminary hearing testimony, because the requirements of *Crawford* have been met in this case. First, it is evident that Petitioner had a prior opportunity for cross-examination, when Godinez was cross-examined at the preliminary hearing. *See Delgadillo v. Woodford*, 527 F.3d 919, 926 (9th Cir. 2008) (finding cross-examination of witness at preliminary hearing sufficient under *Crawford*.) Second, the record reflects that the prosecution's efforts to locate Godinez were reasonable under the circumstances. The trial judge held a hearing on Godinez's unavailability and the investigator testified that he called the witness multiple times, traveled to three cities to locate Godinez, and spoke with the witness's girlfriend. Ans., Ex. B. at 455. The investigator enlisted the assistance of

various officers who were familiar with Godinez and provided additional officers with Godinez's name, date of birth, and photograph. *Id*. 455–56. He also reported that Godinez had been incarcerated in jail shortly before trial and the investigator had been in contact with Godinez up until that time. *Id*. at 455–56. Based on the record, it is clear that the investigator competently explored the leads available to him.

Petitioner argues that the efforts made by the investigator took place just two weeks before trial and suggest a lack of diligence. Pet. at 9. He further contends that the prosecutor should have served a subpoena on Godinez earlier, knowing, based on Godinez's testimony at the preliminary hearing, that Godinez did not wish to testify in this case. *Id*. As the state appellate court noted, however, Godinez had voluntarily appeared for an interview at the District Attorney's office during the pendency of the case. Godinez had also been previously served with a subpoena to appear at the preliminary hearing, and appeared without incident. While it is true that the prosecutor could have served Godinez with a subpoena earlier, based on Godinez's past behavior, there was nothing to indicate that he would become unavailable to testify at the trial. *See Hardy*, *supra*, 565 U.S. at 71. Further, the investigator testified that he believed Godinez would remain in jail through the time of trial. Based on the foregoing, the state appellate court was not unreasonable in finding Godinez unavailable to testify at trial.

**b. Godinez's Statements to the Police**

Petitioner argues that the state court erred in admitting Godinez's testimonial statements made to the police, which were used to impeach Godinez's testimony. Pet. 7–14. As noted by the state appellate court, the victim made three statements to the police regarding the shooting. The first was made immediately following the shooting, the second was made approximately forty-five minutes later at the hospital, and the third was made in an interview with law enforcement over a month later.

"Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis v. Washington*, 547

U.S. 813, 822 (2006). In evaluating whether the primary purpose of an investigation is to meet an ongoing emergency, the court must objectively evaluate the circumstances in which the encounter occurred and the statements and actions of the parties. *Michigan v. Bryant*, 562 U.S. 344, 359 (2011). Factors that may be considered include whether a weapon was used and the medical condition of the declarant. *Id.* at 364–65. The inquiry should not focus simply on whether the threat has been neutralized as to the first victim, as it may still exist as to first responders and the public. *Id.* at 363.

The record reflects that the initial statements made by Godinez at the scene of the shooting were nontestimonial in nature. The first statement was made following a 9-1-1 call. Ans., Ex. B at 605. Deputy Gordon arrived at the scene three to five minutes after the call was placed and testified that she observed a gunshot victim inside the home sitting on a chair. *Id*. at 606–07. The officer testified that she briefly obtained a suspect description from Godinez when she first entered the house, for the purpose of ensuring officer safety. *Id*. at 608–09. The officer relayed that Godinez described the shooter as a fellow gang member, 18 years old, who goes by the name Michael. *Id*. at 609. A second officer, Deputy Desantiago, testified that he observed Godinez sitting on a chair "and kind of a chaotic scene. There were kids screaming and women crying and the victim was trying to compose himself." *Id*. at 631. Desantiago testified that Deputy Sims rolled down Godinez's socks and observed a large amount of blood. *Id*. at 632–33. The deputies then asked Godinez simple questions about the suspect to ascertain whether the shooter was still present. *Id*. at 634. While Desantiago relayed that he gave Godinez "somewhat of a guilt trip" to coax information out of him, he made clear that the intended purpose was to glean information about the potential suspect for the safety of those present. *Id*. at 634–36. Godinez, who was initially hesitant to provide information, ultimately replied that the shooter, a gang member, was named Michael. *Id*. at 635–37.

The record establishes that the statements made by Godinez were relayed to enable the police to meet an ongoing emergency. The deputies arrived on the scene immediately following the shooting; the scene was chaotic, with children present and the victim

bleeding. For the safety of the deputies and bystanders, the police needed to ascertain whether the shooter was still present. *See Bryant*, 562 U.S. at 363. Based on the record, the state appellate court did not unreasonably conclude that the initial statements made to the deputies were nontestimonial.

With respect to Godinez's subsequent statements, the parties appear to concede that they were testimonial. Respondent argues, however, that "the only statement that incriminated petitioner was the statement at the scene." Ans. at 4–5. Irrespective of whether that is the case, as already noted, Godinez was unavailable to testify at trial and had previously been cross-examined at the preliminary hearing. *See* Ans., Ex. A at 24–26. This is sufficient under *Crawford*.

In *Delgadillo v. Woodford*, 527 F.3d 919 (9th Cir. 2008), the Ninth Circuit held that the state court did nor err in applying *Crawford* when it found that statements made to the police by the complaining witness, who later became unavailable, were admissible at trial. In *Delgadillo*, the complaining witness made multiple statements to the police asserting that her boyfriend assaulted her. 527 F.3d at 922. At the preliminary hearing, she denied telling the police the identity of the abuser. *Id*. The complaining witness, who later married her boyfriend, was deemed unavailable at trial, and the trial court allowed the state to read her testimony from the preliminary hearing. *Id*. at 922–23. Various officers testified at trial on behalf of the state about her inconsistent statements to the police identifying the abuser, for impeachment purposes. *Id*. at 923. The Ninth Circuit held that the complaining witness's statements to police "were admissible at trial because she was unavailable and [the defendant] did cross-examine her at the preliminary hearing." It found that the state court determination was "consistent with *Crawford*" and its requirement of "unavailability and prior opportunity for cross-examination" for the admission of out-of-court testimonial statements. 527 F.3d at 926. Here too, the record reflects that Godinez was unavailable, and he was cross-examined at the preliminary hearing. Thus, the state appellate court's decision finding no error in permitting the impeachment testimony was not unreasonable.

Finally, to the extent the trial court erred in admitting any of the testimony, that error was harmless. As noted by the state appellate court and reflected in the record, Godinez's girlfriend, Maricela Escobedo, was impeached at trial with her statements to the police identifying Petitioner as the shooter and describing her familiarity with the shooter in detail. Ans., Ex. B. at 118–21. At trial, Officer Gordon testified that he interviewed Escobedo and she identified the shooter by showing him photographs of Petitioner's Facebook page. Ans., Ex. B at 611–612. The record also reflects that samples taken from Petitioner's hands tested positive for gunshot residue and Petitioner's vehicle was observed at the crime scene. *Id*. at 325–29, 435. Thus, the jury was presented with considerable additional evidence implicating Petitioner in the shooting. Because the state appellate court's rejection of Petitioner's Confrontation Clause claim was neither an unreasonable application of Supreme Court precedent, nor an unreasonable determination of the facts, he is DENIED relief on claim one.

**2. Sufficiency of the Evidence**

Petitioner argues there was insufficient evidence to support the gang enhancement under California Penal Code § 186.22. Pet. 14. Specifically, Petitioner challenges that there was sufficient evidence showing that El Hoyos Palmas (EHP) engages in a pattern of criminal acts, and that one of its primary activities is the commission of one or more crimes listed in the statute. *Id*. at 14–15. He also avers that the State failed to prove that he acted with the requisite intent to further the criminal conduct of EHP. *Id*. at 16.

The state appellate court addressed this claim as follows:

> Defendant contends that the evidence presented at trial was insufficient to prove the charged gang enhancements. (Pen. Code § 186.22, subd. (b)(1)(C) and (b)(4).) He argues that there is insufficient evidence indicating a primary activity of defendant's gang, El Hoyo Palmas, is one of the criminal offenses enumerated in Penal Code section 186.22, subdivision (e)(1) through (33). He also asserts there is insufficient evidence that the shooting was done with the specific intent to promote, further, or assist the gang as required by Penal Code section 186.22, subdivision (b)(1)(C) and (b)(4).
>
> In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the judgment. (*People v.*

*Johnson* (1980) 26 Cal.3d 557, 578.) We do not reweigh the evidence or judge the credibility of witnesses, and we must affirm if any rational trier of fact could find the elements of the crime or enhancement beyond a reasonable doubt. (*Ibid*.)

In order to prove the sentencing enhancement provided for by Penal Code section 186.22, the prosecution must show that committing certain crimes is a primary activity of the gang in question, meaning that gang members have "consistently and repeatedly" committed criminal activity listed in the statute. (*People v. Sengpadychith* (2001) 26 Cal.4th 316, 324 (italics omitted).) The specified offenses are listed in Penal Code section 186.22, subdivision (e)(1) through (33), and include assault with a deadly weapon; robbery; homicide; sale of controlled substances; shooting at an inhabited dwelling; and intimidation of victims.

The evidence presented at trial was sufficient to support the primary activity element. The prosecution presented the testimony of a gang expert who testified that El Hoyo Palmas is a subset of the Norteño gang that has existed since the 1970s and its members commit acts of violence and criminal activity regularly. He also testified the primary activities of El Hoyo Palmas include drug sales, gun sales, assaults with deadly weapons, and murder. Evidence was presented of specific crimes that occurred in 2009 and 2011 which qualify as offenses enumerated by Penal Code section 186.22(e).

Defendant reminds us, citing *In re Daniel C.* (2011) 195 Cal.App.4th 1350, 1364, that " 'an expert's opinion is no better than the fact on which it is based,' " but in this case the expert's opinion was based on the witness's personal observations from twenty years as a law enforcement officer, including nearly one thousand contacts with gang members, a few hundred arrests of gang members, and the investigation of numerous gang related crimes involving subsets of the Norteño gang. This is plainly not the situation that was presented in *In re Alexander L.* (2007) 149 Cal.App.4th 605, 614, another case cited by defendant, where the gang expert's testimony regarding the pattern of criminal offenses was nothing more than the witness saying he knew members of the gang had been involved in certain crimes, without providing any foundation for how he obtained that knowledge. The evidence here was sufficient to allow the jury to conclude that the commission of one or more of the specified offenses was a primary activity of El Hoyo Palmas.

The evidence was also sufficient to prove the shooting was committed with the specific intent to promote, further, or assist in criminal conduct by gang members. "Expert opinion that particular criminal conduct benefited a gang by enhancing its reputation for viciousness can be sufficient to raise the inference that the conduct was 'committed for the benefit of ... a [ ] criminal street gang' within the meaning of section 186.22(b)(1)." (*People v. Albillar* (2010) 51 Cal.4th 47, 63.) The prosecution's expert witness in this case opined, with an adequate factual foundation, that the shooting was committed

> for the benefit of the gang because it was done in retaliation for the victim's stated intention to step away from the gang, and it furthered the gang's reputation for intimidation and violence. Even without the expert's conclusion about the motivation for the act of violence, the jury could have reasonably inferred from the available evidence that the victim was shot in retaliation for his recent public expressions that he wanted to step back from the gang.
>
> *People v. Ramirez* (2016) 244 Cal.App.4th 800, cited by defendant in his reply brief, is distinguishable. In that case the court concluded that evidence of one gang member shooting another, without more, was not an adequate basis for an expert's opinion that the shooting was for the benefit of the gang. (*Id*. at p. 819.) In contrast, the expert's opinion here was that the shooting benefited the gang by serving as punishment for attempting to leave the gang and as a warning to others not to try to do the same. This would serve to increase gang leaders' control over members. The jury here was presented with sufficient evidence from which to find an intent to benefit the gang, even though other evidence may have pointed to the contrary conclusion that the shooting was motivated by a personal dispute between the victim and the shooter. Our task in reviewing the sufficiency of the evidence is not to reweigh the evidence. We must presume that the jury rejected the theory of a purely personal dispute in favor of the gang-related theory that supports the judgment. (*People v. Ryan* (1999) 76 Cal.App.4th 1304, 1313 [" ' " 'If the circumstances reasonably justify the trial court's findings, reversal is not warranted merely because the circumstances might also be reasonably reconciled with a contrary finding.' " ' "].) On this record a rational trier of fact could conclude that the necessary elements for the charged gang enhancements were proven beyond a reasonable doubt.

*Valadez*, 2017 WL 1058438, at *5–6.

Evidence is constitutionally sufficient to support a conviction when, upon "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis excluded). The reviewing court must presume the trier of fact resolved any conflicts in the evidence in favor of the prosecution and must defer to that resolution. *Id*. at 326. State law provides "for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (quoting *Jackson*, 443 U.S. at 319). The only question is "whether the finding was so insupportable as to fall below the threshold of bare

rationality." *Id.* at 656. The jury, not the court, decides what conclusions should be drawn from evidence admitted at trial. *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). The jury's credibility determinations are, therefore, entitled to near-total deference. *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004).

The state appellate court's rejection of this claim was not unreasonable. To prove a gang enhancement under California law, the prosecution must prove that the specified gang constitutes a "criminal street gang", *i.e.*, "(1) that there be an 'ongoing' association involving three or more participants, having a 'common name or common identifying sign or symbol'; (2) that the group has as one of its 'primary activities' the commission of one or more specified crimes; and (3) the group's members either separately or as a group 'have engaged in a pattern of criminal gang activity.' " *People v. Vy*, 122 Cal. App. 4th 1209, 1222 (2004). A pattern of criminal gang activity requires the commission of or attempted commission of two or more specified criminal offenses within three years. *See* Cal. Pen. Code § 186.22 (e). Those specified crimes include, among others: assault with a deadly weapon, robbery, unlawful homicide, sale of controlled substances, shooting at an inhabited dwelling, and intimidation of victims. *Id*.

Petitioner argues that there was insufficient evidence to prove the second and third elements of a criminal street gang, outlined above. With respect to these elements, the prosecution's gang expert, Deputy Owens, testified that EHP is a subset of the Norteno gang, and that all EHP gang members fall under the Norteno leadership. Ans., Ex. B at 231–33. He testified that EHP engages in a pattern of criminal gang activity, including "drug sales, gun sales, burglary, assaults, assault with deadly weapons, murder, conspiracy, intimidation." *Id*. at 239. He testified specifically about a 2009 assault with a deadly weapon committed by a member of the Norteno gang. *Id*. at 246–250. He then testified about a second assault with a deadly weapon committed in 2011 by two EHP members. *Id*. at 250–53. In both instances, the gang members were convicted and charged with gang enhancements. Owens' expert testimony was based on his extensive knowledge and training in criminal street gangs and his specific knowledge of the Norteno gang and its

many subsets. His testimony about the pattern of crimes committed by EHP, as well as specific crimes committed in 2009 and 2011, was sufficient to fulfill the statutory requirements for a gang enhancement. Viewing the evidence in the light most favorable to the prosecution, it was reasonable for the state appellate court to conclude that there was sufficient evidence to support the gang enhancement beyond a reasonable doubt. *Jackson*, 443 U.S. at 319.

Turning to the second part of Petitioner's claim, the state court did not unreasonably conclude that there was sufficient evidence to prove the shooting was committed "with the specific intent to promote, further, or assist in any criminal conduct by gang members" as required under the statute. *See* Cal. Pen. Code § 186.22 (b)(1). Deputy Owens opined that Petitioner is a member of EHP, based on Petitioner's social media posts, tattoos, clothing, and hand symbols, as well as statements made by witnesses affirming that Petitioner is a member of EHP. Ans., Ex. B at 253–64. Owens then opined that Godinez, the victim, was part of EHP, and that the shooting in this case was committed for the benefit of EHP. *Id*. at 279. Owens explained, based on his review of social media posts, that Godinez expressed his desire to step away from the gang. *Id*. at 279–87. As a result, Petitioner shot Godinez as a warning to fellow gang members that they will be punished and dealt with violently if they do the same. *Id*. This in turn bolstered the gang's reputation for fear, intimidation, and violence, and enhanced EHP's control over its gang members. *Id*. at 280. Based on the foregoing, there was sufficient evidence to find that Petitioner had the requisite intent to be charged with the gang enhancement. While the jury could have concluded that the shooting was exclusively because of a personal dispute, it ultimately did not. This Court must defer to that finding. *See Jackson*, 443 U.S. at 326. Because the state appellate court's rejection of this claim was neither an unreasonable application of Supreme Court precedent, nor an unreasonable determination of the facts, Petitioner is DENIED relief on claim two.

United States District Court
Northern District of California

**IV. CONCLUSION**

After a careful review of the record and pertinent law, the Court concludes that the Petition must be **DENIED**.

Further, a Certificate of Appealability is **DENIED**. *See* Rule 11(a) of the Rules Governing Section 2254 Cases. Petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Nor has Petitioner demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure. *See* Rule 11(a) of the Rules Governing Section 2254 Cases.

The Clerk shall enter judgment in favor of Respondent and close the file.

**IT IS SO ORDERED**.

Dated: _March 26, 2021______

BETH LABSON FREEMAN
United States District Judge